UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| PATRICIA WOJTOWICZ, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 2:12-CV-9 |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| Defendant | ) | |

OPINION AND ORDER

Patricia Wojtowicz seeks judicial review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits under the Social Security Act, 42 U.S.C. § 423. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g). For the reasons that follow, the court reverses the Commissioner's decision and remands for further proceedings.

Ms. Wojtowicz contends that she is disabled due to a learning disability. Her claims were denied initially, on reconsideration, and after an administrative hearing at which she was represented by counsel.

At that hearing, the ALJ considered the documentary evidence presented at that hearing, and testimony from Ms. Wojtowicz and her mother, and a vocational expert. Applying the agency's standard five-step analysis, 20 C.F.R. § 404.1520,

---

[1] Carolyn W. Colvin, the Acting Commissioner of Social Security, has been substituted as the named defendant, pursuant to Fed. R. Civ. P. 25(d)(1).

1

the ALJ found that Ms. Wojtowicz didn't meet or equal the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpt. P, App. 1, specifically Listing 12.02 (organic mental disorders) (step three). At step four, the ALJ found that Ms. Wojtowicz had the residual functional capacity to perform a full range of work at all exertional levels with nonexertional limitations (she was restricted to unskilled, simple, repetitive, routine work, involving minimal interaction with others, and couldn't work in a highly social or face paced environment with high production quotas). Based on those findings and the vocational expert's testimony, the ALJ found that Ms. Wojtowicz couldn't perform her past relevant work as a bagger (step 4), but was capable of performing numerous other jobs that were available in significant numbers in the national economy given her age, education, work experience, and residual functional capacity, such as feeder/off bearer, industrial cleaner, and dishwasher. (step 5). The ALJ thus concluded that Ms. Wojtowicz wasn't disabled within the meaning of the Act, and wasn't entitled to benefits through the date of his decision (August 16, 2010).

The Appeals Council denied Ms. Wojtowicz's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security. Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010); Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005). This appeal followed.

The ALJ's opinion denying Patricia Wojtowicz's application employed boilerplate language in explaining the ALJ's credibility determination:

> the claimant's medically determinable impairments could reasonably be expected to cause the alleged reported symptoms; however, the claimant's representations concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible to the extent they are inconsistent with the above residual functional capacity assessment herein. Moreover, although the claimant is alleging disability, the record shows that she is indeed able to sustain substantial gainful work activity.

Court have justly criticized this language because of its unhelpfulness. Bjornson v. Astrue, 671 F.3d 640, 645 (7th Cir. 2012); Parker v Astrue, 597 F.3d 920, 922 (7th Cir. 2010). If the sentence means what it says, one must read the opinion from back to front, first identifying the ALJ's residual functional capacity, then looking to the claimant's testimony, sorting out what supports the finding (and hence was credible) from what doesn't support the finding (and hence wasn't believed). Brindisi v. Barnhart, 315 F.3d 783, 787-788 (7th Cir. 2003).

Use of the boilerplate language doesn't require reversal; courts examine whether the ALJ points to information that justifies her credibility determination. *See* Shideler v. Astrue, 688 F.3d 306, 311-312 (7th Cir. 2012); Getch v. Astrue, 539 F.3d 473, 483 (7th Cir. 2008). Still, the likelihood of reversal increases as the claimant's credibility becomes more central to resolution of the petition for benefits.

Ms. Wojtowicz's credibility and the inferences her testimony supported are critical to this case. Ms. Wojtowicz contends the ALJ erred by finding that Ms. Wojtowicz didn't have an impairment that met or equaled an impairment found in the Listing of Impairments (step 3 of her analysis). Ms. Wojtowicz would have

satisfied that step had the ALJ found that she met the requirements of Listing 12.02(C):

> C. Medically documented history of a chronic organic mental disorder of at least 2 years duration that had caused minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> * * *
>
> 3. Current history of 1 or more years inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Part 404, Subpt. P., App. 1, § 12.02(C).

Everyone seems to agree that Ms. Wojtowicz fits that listing apart from an inability to function outside a highly supportive living arrangement, on which the parties disagree. Nor does disagreement seem to exist as to whether Ms. Wojtowicz's mother was providing her with a highly supportive living arrangement. The dispute surrounds Ms. Wojtowicz's ability to function outside the environment her mother provides. On this issue, the ALJ found:

> The record failed to show that the claimant is unable to live outside of a highly supportive environment. Although the claimant lives with her mother, she is able to work outside the home. She has also been able to look for work, even if she requires help.

An ALJ must build a logical bridge from the evidence to the result. *See* Giles ex rel. Giles v. Astrue, 483 F.3d 483, 486 (7th Cir. 2007). The bridge from the evidence to the ALJ's determination that Ms. Wojtowicz can function outside her home is difficult to make out.

4

In her brief in this court, the Commissioner understood the ALJ to mean that Ms. Wojtowicz's desire to work and regular searches reflect an ability to function. The Commissioner's brief sees the assistance she received from a state agency job coach as further proof: "The fact that a state agency job coach was (and is) helping her search for jobs, for the past two years, also detracts from her allegations that she is disabled as it is very hard to believe that any state agency would expend resources to assist an individual in finding a job if they believed that the individual was not able to work because of a disability." (Doc. 18 at 13).

One can read the ALJ's explanation as the Commissioner's brief does, but that reading creates no logical bridge. One who is neither employed nor receiving disability benefits has little choice other than to seek work, and state job coaches ordinarily don't have discretion to refuse help to such a person. If Ms. Wojtowicz had a job, her employment might tell us much about her ability to function outside a highly supportive environment. That she conducts a job search that has been unsuccessful even with the help of a job coach doesn't support a finding that she can function outside that highly supportive environment.

That Ms. Wojtowicz can look for work tells us something about her ability to function outside her home, but the record before the ALJ contained much more evidence about her ability to function. The ALJ found some of that evidence to be true.

Evidence in the record indicated that Ms. Wojtowicz was in special education classes throughout her school years and needed a tutor. Ms. Wojtowicz

5

graduated from high school with poor grades. She had difficulty with social relationships and had no friends. She would lose her temper with acquaintances, customers, and her mother. The job coach had helped Ms. Wojtowicz with job applications and transportation to job interviews for two years. She helped her mother babysit a child. Ms. Wojtowicz testified that she was rarely alone with the child; her mother said Ms. Wojtowicz handled the solo babysitting "pretty good." Ms. Wojtowicz couldn't make change or handle her own finances; her mother handled her finances for her. At home, Ms. Wojtowicz could wash and dry dishes and vacuum, but couldn't sort laundry, cook a meal, or drive. Her mother helped her wash her hair. She could walk alone to a local movie theater and walk to a fast food place on her way home. Ms. Wojtowicz's mother helped her answer questions during an interview; the answers that Ms. Wojtowicz personally gave consisted of sentences of two or three words.

Ms. Wojtowicz previously worked as a bagger at two grocery stores and as an aide at a nursing home (she passed out food trays and wheeled residents to appointments), always part-time. The vocational examiner testified that a person described in the ALJ's hypothetical — a 35-year-old high school graduate with no exertional limitations but who was limited to unskilled, simple, routine, repetitive jobs with minimal contact with the general public and co-workers, and no fast pace or production quotas — couldn't do Ms. Wojtowicz's past work, but could do some other jobs. Ms. Wojtowicz's IQ is somewhere between 75 and 78. Although

6

she didn't claim disability on the basis of her physical condition, she suffers from cerebral palsy.

At age 35, Ms. Wojtowicz had never lived independently of her mother.

Perhaps this record would support a finding that Ms. Wojtowicz can function outside of her highly supportive home environment, or perhaps not. Resolution depends on what the fact-finder makes of this evidence and what inferences the fact-finder draws from it. Resolution might depend on what Ms. Wojtowicz's mother meant when describing her daughter's ability to care for a ten-year-old without supervision as "pretty good." Resolution might depend on how long ago, and how well, Ms. Wojtowicz did the grocery bagging jobs the vocational expert testified she could no longer do. Resolution might depend on whether the fact-finder saw walking to and from the movie theater as an example of Ms. Wojtowicz's ability to handle herself outside the home, or rather as the most independence she had ever managed to achieve outside the home.

Whether Ms. Wojtowicz can function outside her highly supported home environment is a question for the ALJ, not this court. But the court's job is to assure that a logical bridge connects the evidence and the ALJ's finding. The ALJ's explanation of her finding is too skeletal for this court to do its job. Remand on this point is needed.

Remand is not needed with respect to Ms. Wojtowicz's other arguments. Ms. Wojtowicz believes the ALJ committed reversible error by failing to consider the severity of Ms. Wojtowicz's physical limitations under Listing 11.07 (cerebral

palsy). The court disagrees. Ms. Wojtowicz sought disability based only a learning disability, not any physical impairment; and, although represented by counsel, didn't present any evidence of any current physical impairments related or unrelated to cerebral palsy. The medical records that were submitted included a report of a May 28, 2008 physical exam at the McAuley Clinic, which showed no physical abnormalities (AR 259-262), and medical records from Jones Clinic covering the period from December 16, 1984 to December 18, 1989, that were also unremarkable. The ALJ considered that evidence in assessing Ms. Wojtowicz impairments, and found that there was no evidence of any significant physical abnormalities. The law requires nothing more.

Ms. Wojtowicz contends that the ALJ breached her duty to develop and full and fair record regarding her physical limitations secondary to cerebral palsy when the ALJ failed to order a consultative physical examination, and failed to considered both her physical and mental impairments in determining disability. Again, the court disagrees.

The ALJ was entitled to exercise her discretion not to order additional evidence, especially since Ms. Wojtowicz was represented by counsel at the hearing, who could have requested additional consultation had he thought it necessary. *See* Nicholson v. Astrue, 341 Fed. App'x 248, 254 (7th Cir. 2009) ("The degree of the ALJ's responsibility to take the initiative [to solicit additional evidence] is influenced, if not entirely dictated, by the presence or absence of counsel for the claimant."); Glenn v. Secretary of Health & Human Servs., 814 F2d

8

387, 391 (7th Cir. 1987) (Where an applicant is represented by an attorney, it may be assumed that the applicant is making his "strongest case for benefits."). Ms. Wojtowicz sought disability based on a learning disability, not a physical impairment, and didn't present any evidence of a current physical impairment. The medical records that were submitted showed no significant physical impairments. The ALJ considered the impairments that were supported by the record in determining disability, and the law requires nothing more.

For all of these reasons, the court REMANDS the case to the Commissioner of Social Security for further proceedings.

SO ORDERED.

ENTERED:   March 29, 2013

/s/ Robert L. Miller, Jr.
Judge
United States District Court